2001 ME 106

**ESTATE OF Charles Loyde DAVIS.**

Supreme Judicial Court of Maine.

Argued: May 17, 2001.
Decided: July 18, 2001.

Robert E. Sandy Jr., Sherman & Sandy, Waterville, ME, for appellants.

Michael A. Cunniff, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, for James Vigue.

Alton C. Stevens, Marden, Dubord, Bernier & Stevens, Waterville, ME, for Charles B. Davis Co., Inc.

J. William Batten, Jabar, Batten, Ringer & Murphy, Waterville, ME, for Peter Bolduc.

Daniel J. Dubord, Joly & Dubord, Waterville, ME, for Key Trust Company, N.A.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Elaine Barstow and Lee Fotter appeal from the summary judgment entered in the Kennebec County Probate Court (*Mitchell, J.*) on the petition filed by Charles B. Davis Company, Inc. to determine the recipient of the residuary estate of Charles Loyde Davis. Davis' will leaves the residuary estate to the trustee of a 1972 trust that Davis established, and the trust provides for the distribution of the trust assets. At issue is whether the 1972 trust was amended by a document signed by Davis in 1992. The court declared that the 1992 document is an amendment to the 1972 trust agreement. Barstow and Fotter argue that the court erred in examining extrinsic evidence, applying a preponderance of the evidence standard of proof, and holding that Davis intended to amend his 1972 trust by creating the 1992 trust agreement. We affirm the judgment.

## I. FACTS AND PROCEDURE

[¶ 2] In June 1972, Davis created a trust naming Depositors Trust Company as the trustee. The trust agreement expressly provides that it can be amended.[1] Davis made minor amendments to the trust in November 1972. Davis further amended the trust in 1983, and, on the same day, he executed a new will. This amendment

---

1. Paragraph 7.1 of the 1972 trust document states in pertinent part: "The grantor hereby expressly retains the power at any time to alter, revoke or terminate any of the provisions herein contained on written notice of the Trustee. . . . "

provides that upon the death of Davis' wife, the trust terminates, and the remaining trust assets are to be distributed by the trustee in accordance with the trust agreement. The will leaves his residuary estate to Depositors Trust, in trust, "to be added to the principal of the trust" created by the 1972 trust agreement.

[¶ 3] In 1992, Davis created a second trust agreement naming Key Trust Company, previously known as Depositors Trust Company, as the trustee. The 1992 trust agreement tracks the language of the 1972 trust document, including the 1972 and 1983 amendments,[2] but the 1992 trust agreement provides for a different distribution of assets.[3] The 1992 trust agreement contains the signature of Davis which is attested to by an officer of Key Trust.

[¶ 4] Davis died in 1999. His wife died in 1996. Davis had no children. The Davis Company filed a petition in the Probate Court to determine the recipient of the residuary of Davis' estate. Under both the 1972 trust agreement and the 1992 trust agreement, all shares of the Davis Company were bequeathed to the trust. In its petition, the Davis Company sought a determination as to whether the residuary estate under the will should pour over into the 1972 trust or into the 1992 trust.

[¶ 5] James Vigue, who is named as a beneficiary in the 1992 trust agreement, but who is not named as a beneficiary in the 1972 trust agreement, responded to the petition and moved for summary judgment. Barstow and Fotter, who are named as beneficiaries in the 1972 trust agreement, responded to the petition and objected to the summary judgment motion. Pursuant to the 1972 trust agreement, Barstow would receive one-half of the trust assets, after certain distributions are made, but in the 1992 trust agreement, she is one of eight beneficiaries who would share the remaining trust assets. Fotter would receive a portion of the trust assets under the 1972 trust agreement, but he is not named as a beneficiary in the 1992 trust agreement.

[¶ 6] The court granted Vigue's motion for summary judgment, finding that Davis intended the 1992 trust agreement to be an amendment of the 1972 trust agreement. In this appeal Barstow and Fotter claim that the Probate Court erred in three respects: (1) by utilizing extrinsic evidence to determine whether the 1992 instrument amended the 1972 trust agreement; (2) by applying a preponderance of the evidence burden of proof; and (3) by concluding that the 1992 document amended the 1972 trust agreement.

## II. DISCUSSION

[¶ 7] We review the entry of a summary judgment de novo for errors of law. Summary judgment is appropriate if the evidence demonstrates that there are no genuine issues of material fact and if the party on whose behalf the judgment is granted is entitled to judgment as a matter of law. M.R.Civ.P. 56(c).

### I. Extrinsic Evidence

[¶ 8] Barstow and Fotter first contend that the court should not have examined extrinsic evidence. In arriving at its conclusion that the 1992 trust agreement is an amendment of the 1972 trust agreement, the court examined 1991 and 1992 correspondence between Cyril Joly, who was Davis' attorney at that time, and Key Trust. These letters were submitted by

---

**2.** For simplicity, when the term "1972 trust" is used herein, it refers to the 1972 trust as amended by the 1972 and 1983 amendments.

**3.** Although Davis executed a codicil to his will in 1998, it makes no reference to the 1992 trust.

the Davis Company and objected to by Barstow and Fotter. The letters are transmittal letters to enclosures. In the first letter Joly notified Key Trust that Davis was "probably" going to make a new will and trust agreement. Joly then sent the new trust agreement to Key Trust asking for suggestions. Key Trust returned three copies of the trust agreement to Joly asking that the original be returned to Key Trust. On the same day that Davis signed the 1992 trust agreement, Joly sent it to Key Trust. The letters were submitted to the court with two affidavits: one from an attorney who practiced with Joly before Joly's retirement; and the other from an officer at Key Trust. Both affiants aver that the letters are in their custody.

■ [¶ 9] In interpreting a trust document, a court only considers extrinsic evidence to determine the settlor's intent if the document is ambiguous. *See Estate of Utterback,* 521 A.2d 1184, 1187 (Me.1987) (stating that resort to extrinsic evidence of objective circumstances is appropriate if will is ambiguous). Although there is no ambiguity on the face of either the 1972 trust agreement or the 1992 trust agreement, an ambiguity is created in three respects: (1) the existence of two trust documents which are identical except for the distribution of assets; (2) trust documents which by their terms are amendable; and (3) a will that refers to "the trust created by that certain Trust Agreement." The ambiguity created by the documents

allows the court to examine extrinsic evidence to determine whether Davis intended the 1992 trust agreement to be an amendment to the 1972 trust agreement.

■ [¶ 10] Barstow and Fotter also object to the court's acceptance of the transmittal letters because they contend that the letters would not be admissible in evidence pursuant to M.R.Evid. 803(6);[4] and, therefore, they could not be considered in the context of the summary judgment motion. *See* M.R.Civ.P. 56(e). Barstow and Fotter argue that the letters were not "kept in the course of a regular conducted business" and it was not "the regular practice" of Joly or Key Trust "to make" the letters. *Id.* We reject this argument. Letters memorializing the transmission or receipt of documents or information may be admissible to prove notice or knowledge if the letters are made and kept in the regular course of business. *See Haygood v. Auto–Owners Ins. Co.,* 995 F.2d 1512, 1517 (11th Cir.1993) (stating that letter to plaintiff from bank's lawyer that foreclosure was imminent admissible under F.R.Evid. 803(6) to show that plaintiff knew about foreclosure). Both affidavits accompanying the Joly and Key Trust letters state that the letters were regularly kept in the course of the business and that the law firm and bank were regularly conducted businesses. It is common for attorneys and businesses to utilize transmittal letters when sending documents to others and to make and keep such letters as part

---

4. M.R.Evid. 803 lists numerous exceptions to the hearsay rule. One of those is Rule 803(6) which reads:

> **(6) Records of Regularly Conducted Business.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regular conducted business, and if it was the regu-

> lar practice of that business to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

of their regular business. The court acted within its discretion to accept the letters for the sole purpose of demonstrating that Key Trust had notice of the 1992 trust instrument.

## 2. Burden of Proof

■ [¶ 11] Barstow and Fotter also object to the standard of proof utilized by the court which was a preponderance of the evidence.[5] They argue that Vigue must prove by clear and convincing evidence that the 1992 trust agreement is an amendment to the 1972 trust. They contend that clear and convincing is the burden of proof to be applied in this case because it is the burden utilized for proving a constructive trust. Barstow and Fotter have not cited any authority, and we discern no policy reasons for requiring a clear and convincing standard in a case, such as this, which does not involve allegations of fraud or raise factual issues that previously have been held to require a heightened burden of proof. *See Taylor v. Comm'r of Mental Health and Mental Retardation*, 481 A.2d 139, 149–50 (Me.1984); *see also Petit v. Key Bank of Maine*, 688 A.2d 427, 431 (Me.1996) (discussing the types of cases requiring the clear and convincing burden of proof and the history of such). Therefore, we conclude that the appropriate burden of proof is preponderance of the evidence.

## 3. The 1992 Trust Agreement

■ [¶ 12] Barstow and Fotter raise several arguments that the court erred in finding that the 1992 trust agreement amended the 1972 trust agreement. First, they point to the lack of express language in the 1992 document stating it is an amendment of the 1972 agreement. This lack, they contend, means that the 1992 document cannot be construed as an amendment. They have not cited, and we have not found, any authority for the proposition that a trust amendment must explicitly recite that it is an amendment. The sole fact that the 1992 document does not expressly declare itself to be an amendment is not dispositive.

■ [¶ 13] Second, they contend that the amendment procedures of the 1972 trust were not followed. The only provision in the 1972 trust document regarding amendments states that Davis reserves the power to amend "on written notice to the Trustee." The signature of the trust officer of Key Trust, the successor trustee of the 1972 trust, on the 1992 trust, as well as the transmittal letters reviewed by the court, demonstrate that the trustee had written notice of the amendment. Nothing further is required by the 1972 trust for amendment of it. *See Woodward v. Ameritrust Co.*, 751 F.2d 157, 160 (6th Cir.1984) (affirming summary judgment declaring trust amendment valid even though trust-

---

**5.** The Davis Company argues that the burden of proof is not relevant when a case is decided on a summary judgment motion because there are no factual disputes. In a defamation case we held that the burden of proof was relevant in determining whether summary judgment is appropriate. *Tucci v. Guy Gannett Publ'g Co.*, 464 A.2d 161, 166–67 (Me.1983). Three years later, in a defamation case, the Supreme Court in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) held that "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." We have not expressly adopted or rejected this requirement in nondefamation cases. *See Bartlett v. Mirabal*, 128 N.M. 830, 999 P.2d 1062, 1070 (2000) (rejecting, in will contest case, the *Anderson* requirement of reviewing summary judgment facts through burden of proof prism). Without opining on whether we would adopt the *Anderson* holding in a nondefamation case, it is sufficient for us to determine in this case that the appropriate burden of proof is preponderance of the evidence.

ee did not consent to amendment; trust document allowed for modification by filing written amendment with trustee and did not require trustee's consent).

[¶ 14] Third, Barstow and Fotter claim that the 1992 document did not follow the same pattern of amending the trust created in 1972 that Davis previously followed. Specifically, they point to the 1972 and 1983 amendments which expressly stated that they were amendments to the 1972 agreement. While the manner of making the two previous amendments is worthy of consideration, it is not controlling.

[¶ 15] Fourth, Barstow and Fotter argue that because Davis did not amend his will after signing the 1992 trust agreement he did not intend the residuary estate to be distributed according to the 1992 trust. This fact proves nothing because there would be no reason for Davis to execute a codicil to his will if he intended the 1992 trust agreement to be an amendment of the 1972 trust agreement.

[¶ 16] Finally, Barstow and Fotter contend that the trust created in 1972 and the trust created in 1992 can stand independently and are not inconsistent. However, the identical language in the documents creating the trusts, with the exception of the distribution provisions, indicates that Davis did not intend to establish two separate trusts. *See Rosenblum v. Gibbons,* 685 S.W.2d 924, 930 (Mo.Ct.App.1984) (holding that 1981 trust was amendment of 1978 trust where instruments were identical except for dispositive provisions and where corpus of both trusts consisted of death benefits from retirement plan).

[¶ 17] We conclude that the summary judgment declaring that the 1992 trust agreement amends the 1972 trust agreement is not erroneous as a matter of law.

The entry is:

Judgment affirmed.