STATE OF MAINE
PENOBSCOT, ss.

FILED & ENTERED
SUPERIOR COURT

MAY 1 6 2002

PENOBSCOT COUNTY

SUPERIOR COURT
CIVIL ACTION NO.
CV-02-14
A.M.M - PEN - _,  _ 2002

S.G. MARINO CRANE        )
SERVICE, CORP.,          )
            Plaintiff    )
                         )        **ORDER AND DECISION ON**
v.                       )        **DEFENDANT'S MOTION TO DISMISS**
                         )        **OR FOR SUMMARY JUDGMENT**
THE SAXON GROUP,         )                    **DONALD L. GARBRECHT**
INC.,                    )                                **LAW LIBRARY**
            Defendant    )

**AUG 26 2002**

The matter is before the court on the motion to dismiss or for summary judgment by the defendant, The Saxon Group, Inc. ("Saxon"). For the following reasons, the motion for summary judgment is granted.

## BACKGROUND

The facts are undisputed. The plaintiff, S.G. Marino Crane Service Corporation ("Marino"), is a Connecticut company that provides cranes and related services to construction contractors. In April of 1999, Marino entered into two contracts with Saxon to provide two cranes, and related labor, materials, and equipment, for use at the construction of the Maine Independence Power Plant in Veazie, Maine (the "Veazie Project"). The two contracts between Marino and Saxon were the only two contracts into which Marino and Saxon ever entered together, and Saxon has never engaged in business dealings with Marino on any project other than the Veazie Project.

At some point, Marino and Saxon got into a dispute over the amounts due and payable to Marino pursuant to the two contracts. In August of 2000, Marino filed a complaint (the "First Complaint") in Maine District Court, entitled S.G. Marino Crane Service Corp. v. Casco Bay Energy Company LLC, as defendant, and The Saxon Group, Inc., H.E. Sargent, Inc. and The Spartan Group, Inc., as parties in interest (the "First Litigation"). The First Litigation was removed to Superior Court on October 4, 2000. Marino's purpose in filing the First Complaint was to collect the amounts allegedly owed by Saxon under the crane contracts. Marino specifically pled that the amounts it sought in the First Litigation arose "by virtue of a contract with The Saxon Group, Inc . . . ." On or about March 6, 2001, Marino moved to dismiss all parties other than Saxon from the First Litigation. The court (Hjelm, J.)

granted the motion without opposition.

On March 14, 2001, Saxon filed a Motion for Judgment on the Pleadings. The basis for the motion was that Marino had dismissed the only named defendant, Casco Bay, leaving only Saxon, which had only been named as a party-in-interest. The court (Hjelm, J.) issued its order dated May 24, 2001, in which it stated:

> [Saxon] correctly observes that because the plaintiff successfully sought the dismissal of its claims against the one defendant and the two other parties-in-interest, the only remaining issue relates to the priority of liens held by the plaintiff and [Saxon], which would be available to satisfy the obligation of the former defendant, Casco Bay Energy Company. Because Casco Bay Energy Company is no longer a party, the existence of any claim against it is not subject to resolution in this case. From this, the court is satisfied that there is no actionable claim remaining against [Saxon].

In that order, the court allowed Marino ten days to move to amend its complaint to cure the procedural defect of not having any defendant left in the lawsuit, and show cause why such an amendment should be allowed several months after the deadline for amendment. On June 4, 2001, Marino moved to amend the complaint to include Saxon as a party-defendant. On July 10, 2001, after having considered Marino's motion to amend, the court (Hjelm, J.) entered an order denying Marino's motion to amend and dismissing Marino's claim against Saxon. The court stated:

> If the plaintiff's motion were granted, Saxon's role in this action would be much different that [sic] its original position, where it appeared only because of its secured interest in an asset in which the plaintiff held some security. It was included in this action only so that the priority of its lien could be determined relative to the plaintiff's interest. The motion to amend itself does not indicate the nature of the claim that the plaintiff seeks to pursue against Saxon, and the plaintiff has not filed a proposed amended pleading embodying such a claim. Nonetheless, it is apparent that the plaintiff seeks to assert a direct claim against Saxon, perhaps for money damages. This casts Saxon in a wholly new role that would work to Saxon's unfair prejudice. For example, because the discovery deadline is August 1, 2001, Saxon would be unable to initiate any discovery in time for its completion within that discovery period. Under these circumstances, the motion to amend must be denied.

Moreover, the court's order specifically dismissed, pursuant to the May 24, 2001 order, the First Complaint against Saxon "with prejudice." Marino did not appeal the July 10, 2001 order dismissing its First Complaint with prejudice.

On January 6, 2002, Marino filed this complaint (the "Second Complaint") in this

2

litigation (the "Second Litigation"). The Second Complaint states that it seeks recovery under a variety of different legal theories arising out of a contract between Marino and Saxon "for Marino to provide crane services and labor at the Maine Independent Power Plant in Veazie, Maine." Specifically, Marino's complaint alleges that Saxon has materially breached the contract by failing to make payments to Marino (Count I); that Saxon has been unjustly enriched by Marino's labor (Count II); that Saxon owed Marino for goods and services delivered (Count III); and that Saxon violated the Maine Prompt Payment Act, 10 M.R.S.A. § 1111 (Count IV). The Second Complaint arises out of the exact same transaction as the First Complaint: Saxon's rental of two cranes from Marino for use on the Veazie Project. On February 14, 2002, Saxon moved to dismiss, or for summary judgment on two grounds. First, that all of Marino's claims are barred by the doctrine of res judicata, and second, that Marino was required by the Mechanic's Lien Statute to pursue all claims against Saxon in the First Litigation.

## DISCUSSION

### I. Summary Judgment Standard

A party is entitled to summary judgment when there are no genuine issues of material fact, and that party "is entitled to judgment as a matter of law." M.R. Civ. P. 56 (c); In re Estate of Davis, 2001 ME 106, ¶ 7, 775 A.2d 1127, 1129. "A fact is material when it has the potential to affect the outcome of the suit." Kenny v. Dep't of Human Services, 1999 ME 158, ¶ 3, 740 A.2d 560, 562 (citation omitted). "An issue is genuine if sufficient evidence supporting the claimed factual dispute exists to require a choice between the parties' differing versions of the truth at trial." Id. (citation omitted). The court must look at the facts in the light most favorable to the party against whom the judgment is being granted. Johnson v. Samson Constr. Corp., 1997 ME 220, ¶ 5, 704 A.2d 866, 868.

### II. Res Judicata

"A plaintiff may not split a cause of action and prosecute each of its parts in separate lawsuits." Johnson, 1997 ME 220, ¶ 7, 704 A.2d at 868 (citation omitted). "Judicial economy, fairness to litigants, and the strong public interest favoring finality in judicial proceedings demand that a plaintiff present all relevant aspects of his cause of action in a single lawsuit." Id. Res judicata prevents a litigant from splintering his or her

3

claim and pursuing it in a piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim that the litigant had a reasonable opportunity to argue in the prior action. Id. As discussed in the Restatement:

> The rule that a defendant's judgment acts as a bar to a second action on the same claim is based largely on the ground that fairness to the defendant, and sound judicial administration, require that at some point litigation over the particular controversy come to an end. These considerations may impose such a requirement even though the substantive issues have not been tried, especially if the plaintiff has failed to avail himself of opportunities to pursue his remedies in the first proceeding, or has deliberately flouted orders of the court.

RESTATEMENT (SECOND) JUDGMENTS § 19 cmt. a (1982).

The doctrine of res judicata is comprised of two types: "issue preclusion" and "claim preclusion." Saxon argues that claim preclusion applies here. "Claim preclusion" prohibits relitigation of an entire cause of action if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action. Camps Newfound/Owatonna Corp. v. Town of Harrison, 1998 ME 20, ¶ 11, 705 A.2d 1109, 1113. Thus, to avoid the risk of subsequent claim preclusion, a plaintiff must seek and exhaust all alternative theories for recovery in one action. In resolving this matter, the court will deal with each of the enumerated requirements in turn.

## A. Was Saxon a "party" in the prior proceeding?

This case is distinguishable from the cases cited by the parties,[1] in that in each of those cases, the first requirement, that of the "same parties or their privies," had been satisfied. In this case, however, there is a question as to whether the "same parties or their privies" are involved in both actions. In the First Litigation, Saxon was a "party in interest," and in the second, is a defendant. The question is, therefore, whether a "party in interest" is considered a "party" for purposes of res judicata.

Generally, "[a] 'party' to an action is a person whose name is designated on record as plaintiff or defendant. [The t]erm, in general, means one having right to control proceedings, to make defense, to adduce and cross-examine witnesses, and to

---

1. Saxon cited Johnson v. Samson Constr. Co., 1997 ME 220, 704 A.2d 866. Marino cited Beegan v. Schmidt, 451 A.2d 642 (Me. 1982), and Kradoska v. Kipp, 397 A.2d 562 (Me. 1979).

appeal from judgment." BLACK'S LAW DICTIONARY 775 (Abr. 6th ed. 1991). The term "party" refers to those by or against whom a legal suit is brought, whether in law or in equity, the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons; all others who may be affected by the suit, indirectly or consequently, are persons interested but not parties. Id. See Golatte v. Mathews, 394 F.Supp. 1203, 1207 n.5 (M.D. Ala. 1975). See also Miller v. Whittier, 33 Me. 521, 525 (1851) ("persons in interest" who have never appeared are not "parties" unless the court allows a motion to bring them in as a "party").

Despite the scant Maine case law on this issue, there is a "control" test a court may apply to determine if one is a "party" under the res judicata doctrine. As stated by James Moore,

> A person with an interest in the outcome who controls or shares control of a suit by another is bound. So with a person who accepts the benefits of the judgment.
> ***
> It can be said, then, that for purposes of the conventional statement that a judgment binds the 'parties' to the action, the word 'parties' does not refer to formal or paper parties, but to parties in interest, which is to say that person whose interests are properly placed before the court by someone with standing to represent them are bound by the judgment in matters determined in the proceeding.

1B J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.411 [1] (2d ed. 1983). Accord Southmark Properties v. Charles House Corp., 742 F.2d 862, 869 (5th Cir. 1984); Knowles v. Tehachapi Valley Hospital Dist., 57 Cal. Rptr. 2d 192, 197 (Cal. App. 5 Dist. 1996) (as matter of due process, a "party" who is to be confronted with res judicata effect of a judgment includes only a party who has to make a defense or to control the course of the proceeding); United Security Ins. Co. v. Hayman, 399 N.E.2d 686, 688 (Ill. App. 3 Dist. 1980) (where trial court had denied insurance company's petition to intervene in dramshop action for the purpose of protecting its subrogation interest, the insurance company could not be deemed a 'party' to the dramshop action, for res judicata purposes); State in Interest of T.J., 945 P.2d 158, 162 (Utah App. 1997) (if person not named as party has control of or substantially participates in action, that person may be deemed a "party" for purposes of res judicata); Lejeune v. Clallam County, 823 P.2d 1144, 1149 (Wash. App. 1992), rev. denied 832 P.2d 488 (party is entitled to claim benefits of res judicata with respect to determinations made while he or she was a "party," i.e.

one who appeared and participated in proceeding or one whose interests were properly placed before the court).

In this case, Marino named Saxon a "party in interest" in the First Litigation and stated that it "may have some claim to the property by virtue of a Notice of Lien . . . ." Although Marino's claims arose out of "a contract with the Saxon Group," it did not name Saxon as "party," only as a "party in interest." After being served on August 29, 2000, Saxon subjected itself to the jurisdiction of this court by answering Marino's complaint on September 19, 2000. In its answer, Saxon admitted it had a contract with Marino and presented defenses based on the premise that Marino's contract was with Saxon, not Casco Bay. Indeed, Marino's Motion to Dismiss all parties except Saxon stated that Saxon had substituted a bond to replace the mechanics' lien filed by Marino. By these acts, Saxon made a defense and had control over the proceedings. Saxon's role was not limited to standing aside and allowing the court to determine its interest in the liened property. Rather, Saxon played an active role in the First Litigation and is thus considered by this court to have been a "party." The first requirement has been satisfied.

### B. Was there a "valid final judgment"?

A valid final judgment must have been rendered in the prior litigation before res judicata can bar a subsequent action. In the First Litigation, Justice Hjelm dismissed Marino's complaint against Saxon "with prejudice." The judgment was valid. See Thibodeau v. Cole, 1999 ME 150, ¶ 5, 740 A.2d 40, 42 (plaintiff was not entitled to amend his complaint in order to add a party, where plaintiff neither attached a proposed amendment to his motion nor demonstrated how any amendment could cure or change the basis of his complaint); Chrysler Credit Corp. v. Bert Cole's L/A Auto Sales, Inc., 1998 ME 53, ¶ 17, 707 A.2d 1311, 1315 (failed auto dealer should not have been allowed to amend its complaint to add as party plaintiff a proposed second dealership which never started operations; dealer's unjustifiable delay in moving to amend its complaint resulted in unfair prejudice to credit corporation, which was effectively deprived of the opportunity to prepare a defense).

"If a party fails to comply with the requirements of [M.R. Civ. P. 16] or any order made hereunder, the court may impose upon the party . . . such sanctions as the

circumstances warrant, which may include dismissal of the action . . . with or without prejudice . . . ." M.R. Civ. P. 16 (d). "The purpose of [the Rule 16 sanctions] is to provide the court with the tools to require adherence to its processes and to encourage the court to use those tools where appropriate." M.R. Civ. P. 16 advisory committee's notes. "The court has discretion to sanction a party for failure to comply with any rule or order made by the court, including pretrial scheduling orders, pursuant to M.R. Civ. P. 16 (d)." Johnson v. Carleton, 2001 ME 12, ¶ 10 n.4, 765 A.2d 571, 575 n.4. Marino never appealed the dismissal with prejudice.

"With prejudice," as used in the context in which an action is dismissed with prejudice, means an adjudication on the merits and final disposition, barring right to bring or maintain an action on same claim or cause. BLACK'S LAW DICTIONARY 1105 (Abr. 6th ed. 1991). Furthermore, "[i]t is well settled that denial of leave to amend [pleadings] constitutes res judicata on the merits of the claims which were the subject of the proposed amended pleading." Dall v. Goulet, 871 F.Supp. 518, 521 n.6, *quoting* King v. Hoover Group, Inc., 958 F.2d 219, 222-223 (8th Cir. 1992). See Johnson v. Samson Constr. Corp., 1997 ME 220, 704 A.2d 866. Federal courts, which have similar standards for res judicata, have held that res judicata operates to preclude future litigation of a claim that was not timely amended to an earlier complaint. See Dall, 871 F. Supp. at 521. Thus, the judgment was valid, and the second requirement has been met.

**C. Did Marino, or could it have, brought this claim in the First Litigation?**

"To determine whether the matters presented for decision in the instant action were or might have been litigated in the prior action, [the court must] examine whether the same 'cause of action' was before the court in the prior case." Johnson, 1997 ME 220, ¶ 6, 704 A.2d at 868. Maine uses a transactional test to define a "cause of action." Under the transactional test,

> the measure of a cause of action is the aggregate of connected operative facts that can be handled together conveniently for purposes of trial. A prior judgment bars a later suit arising out of the same aggregate of operative facts even though the second suit relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, and involves evidence different from the evidence relevant to the first case.

Connecticut Nat'l Bank v. Kendall, 617 A.2d 544, 547 (Me. 1992) (quotation and citations omitted). See Bangor Publ'g Co. v. Town of Bucksport, 682 A.2d 227, 229-230 (Me.

1996) (newspaper barred from attacking valid protective order because it could have intervened in prior action).

In this case, the First and Second Litigations arise out of the same operative facts. Saxon and Marino entered into two contracts for construction cranes and Marino is looking to recover the amounts allegedly due under those contracts. In the First Action, Marino brought a mechanics' lien claim, a breach of contract claim, and an "amount due for goods and services delivered" claim against Casco Bay, with Saxon named as a party in interest. Marion then looked to amend the pleading to name Saxon as the defendant. It was this complaint that was dismissed with prejudice. In the Second Litigation, Marino brings an unjust enrichment claim, an "amount due for goods and services delivered" claim, a breach of contract claim, and a violation of the Maine Prompt Payment Act claim. The breach of contract and "amount due for goods and services delivered" claims (Counts I and III, respectively) were brought in the prior litigation and are, therefore, dismissed. Although they were not originally brought directly against Saxon, they could have, and should have, been. Saxon was the party with whom Marino entered the contract.

Furthermore, as discussed below, the unjust enrichment and prompt payment claims (Counts II and IV, respectively) are also dismissed, as they were also brought in the prior litigation. "[B]ringing a second claim based upon the same series of occurrences but under a new legal theory does not escape the effect of claim preclusion." Dall, 871 F.Supp. at 522.

### 1. Unjust Enrichment Claim (Count II)

The Mechanics' Lien Law provides:

> Whoever performs labor or furnishes labor or materials . . . or performs services . . . as an owner-renter, owner-lessor, or owner-supplier of equipment used in erecting, altering, moving or repairing a house, [or] building . . . by virtue of a contract with or by consent of the owner, has a lien thereon and on the land on which it stands and on any interest such owner has in the same, to secure payment thereof, with costs. *** If the owner of the building has no legal interest in the land on which the building is erected . . . the lien attaches to the building . . . .

10 M.R.S.A. § 3251 (2001).

"The cornerstone of the Mechanics' Lien Law is the prevention of unconscionable

8

and unjust enrichment. A lien is given upon the ground that the work has been a benefit to the realty, and has enhanced its value." Combustion Engineering v. Miller Hydro Group, 577 A.2d 1186, 1188 (Me. 1990), *quoting* Bangor Roofing & Sheet Metal Co. v. Robbins Plumbing Co., Inc., 151 Me. 145, 148 (1955). Because the mechanics' lien claim from the First Litigation is based upon the same principal as the unjust enrichment claim in the Second Litigation, Marino's unjust enrichment claim was brought up in prior litigation and is, therefore, dismissed.

### 2. Maine Prompt Payment Act, 10 M.R.S.A. § 1111 (Count IV)

The "Prompt Payment Act," essentially provides that parties to a construction contract must pay in accordance with the terms of the contract. See 10 M.R.S.A. §§ 1111 to 1120 (1997). Although the claim in the Second Litigation is based on statute (10 M.R.S.A. §§ 1111 to 1120), and the claim in the First Litigation was based on common law (breach of contract), both claims are based on the same theory, *i.e.*, that Saxon breached a duty, either statutory or common law, to fulfill its promises under a contract. For that reason, Marino's violation of the Maine Prompt Payment Act claim was or could have been brought against Saxon in the prior litigation. The court, therefore, dismisses this claim.

THE DOCKET ENTRY IS:

> The defendant's motion for summary judgment is granted. The plaintiff's complaint is dismissed.

The clerk is ordered to incorporate this order into the docket by reference.

Justice, Superior Court

DATED: May 16, 2002

9