STATE OF MAINE                        SUPERIOR COURT
AROOSTOOK, SS.                        CIVIL ACTION
                                      DOCKET NO. 2014-167


DAVID L. GAGNON and
STEVEN GAGNON,
          Plaintiffs

V.                                    **DECISION AND JUDGMENT**

SHEILA CANNON,
          Defendant


## INTRODUCTION AND PROCEDURAL BACKGROUND

This matter is before the court for decision following a one-day bench trial held on August 30, 2017. The Plaintiffs commenced this action on November 4, 2014 by the filing of a two-count Complaint for Declaratory Judgment seeking to establish that (A) they have a superior title to a certain parcel of real estate in Van Buren, Maine (Count I), and (B) the Defendant's acquisition of the disputed real estate from the Town of Van Buren through a tax lien foreclosure process was defective and invalid (Count II).

On July 16, 2015, the Defendant moved for summary judgment in her favor. On July 27, 2015, the Defendant also moved to disqualify the Plaintiffs' counsel on the ground that he was a material and necessary witness in the action. The motion to disqualify was granted on October 23, 2015 and counsel's subsequent motion to withdraw was granted on November 2, 2015. The Defendant's motion for summary judgment was denied on December 5, 2016.

1

Trial was held on August 30, 2017. The court received the testimony of the following witnesses called by the Plaintiffs: David Gagnon; Jessica Cyr, and; Sheila Cannon. The Defendant called the following witnesses: Gary Levesque and Attorney William Smith. Defendant's Exhibits 1-16 and 20-23 were admitted as were Plaintiffs' Exhibits 2, 6 and 7. Plaintiffs' Exhibits 1, 3, 4 and 5 were admitted *de bene*. The parties exchanged written summations, with the last submission being received by the court on October 16, 2017.

Based upon the testimony and exhibits presented at trial, and after consideration of the parties' written arguments, the court makes the following findings of fact.

## FACTS

The dispute in this case involves a parcel of land in Van Buren owned by Albertine and Aurel Gagnon and referred to by the parties at trial as the "River Lot." It is further described by the Town of Van Buren as Tax Map 8, Lot 18. (Def.'s Exhs. 15 & 19). The Plaintiffs, David and Steven Gagnon, are two of the seven sons of Albertine and Aurel.

Albertine and Aurel became the owners of this parcel of real estate through a warranty deed dated June 23, 1995 from Bertrand Sirois. (Def.'s Exh. 21). At some time in 1996, Albertine and Aurel agreed to sell the property to Peter Lagasse of Connecticut for the sum of $7,000. The Gagnons received full payment of the purchase price from Mr. Lagasse and, accordingly, had a warranty deed prepared by Attorney William Smith. The warranty deed drafted by Attorney Smith was signed by Mr. and Mrs. Gagnon and is dated January 31, 1997, and purported to convey the property to Mr. Lagasse. (Def.s' Exh. 1). A Real Estate Transfer Tax Declaration

2

Form was also signed by the Gagnon's and is also dated January 31, 1997. (Def.s' Exh. 2).

On February 5, 1997, Attorney Smith, acting on behalf of Albertine and Aurel Gagnon, wrote to the grantee, Mr. Lagasse, and sent him the original warranty deed and transfer tax form signed by the Gagnon's. He also enclosed a check dated February 5, 1997 for the seller's transfer tax. (Def.'s Exh. 3). He concluded his letter by stating: "This should complete matters on behalf of Mr. & Mrs. Gagnon." (*Id.*).

It appears from the evidence that a few days prior to Attorney Smith's letter of February 5, 1997, he had a telephone conversation with Mr. Lagasse. Specifically, Plaintiffs' Exhibit 4, admitted by the court *de bene,* is a letter from Peter Lagasse to Attorney Smith dated February 3, 1997.[1] It appears to have been received by Attorney Smith on February 6, 1997. The letter makes reference to a phone call from Attorney Smith to Mr. Lagasse earlier that day of February 3, 1997.

In this letter, Mr. Lagasse raised a number of issues/concerns he had with the "land transfer," and concluded by stating: "I will accept no deed

---

[1] Plaintiffs' Exhibits 1, 3, 4 and 5 were received by the court *de bene* at the trial held on August 30, 2017. Plaintiffs' Exhibit 1 is a letter dated January 10, 2000 to Town Treasurer Larry Cote from Peter Lagasse; Plaintiffs' Exhibit 3 is the Van Buren Town Charter; Plaintiffs' Exhibit 4 is the letter dated February 3, 1997 from Mr. Lagasse to Attorney Smith and Plaintiffs' Exhibit 5 is another letter from Mr. Lagasse to Attorney Smith dated February 10, 1997. The Plaintiffs have argued that the Lagasse letters are admissible as evidence of the declarant's then-existing state of mind pursuant to M.R.Evid.803(3), or as public records pursuant to M.R. Evid. 803(8) since the Town kept copies of the letters, or as statements against interest pursuant to M.R.Evid. 804(b)(3)(A). The court is not persuaded that the letters are public records. Likewise, the court is not convinced that the letters qualify as statements against interest. The court will, however, admit the letters and will consider them as relevant to the declarant's (Mr. Lagasse's) then-existing state of mind, including his beliefs, intent or plan. Moreover, the court will admit Plaintiffs' 3, the Town Charter, as a public record.

3

dated prior to your retainment [sic]." He also asserted that would not accept or sign any documents "for your clients [sic] relief pending the outcome of any local, state, or federal investigation."

A second letter from Mr. Lagasse to Attorney Smith was dated February 10, 1997 and appears to have been received by Attorney Smith on February 14, 1997. (Plt.'s Exhibit 5). With that letter, Mr. Lagasse returned the check previously sent to him by Attorney Smith. Mr. Lagasse acknowledged receipt of the warranty deed and the transfer tax declaration form and he described both documents as "false and misleading." He claimed that "the warranty deed is not lawfully seized in fees of the premises," and he informed Attorney Smith that he would not be filing the deed with the registry of deeds. Finally, he accused the Gagnon's of being "in unlawful possession of $7000.00 of my money," and he indicated that he was referring the matter to the District Attorney's Office and the Van Buren Police Department "for their consideration."

Neither the Gagnon's nor Mr. Lagasse paid the real estate taxes for the property identified as Map 8, Lot 18 for tax year 1997-1998 that were assessed and due in July 1997. Moreover, the Gagnon's retained the $7,000 purchase price and Mr. Lagasse kept the original warranty deed. (Plt.'s Exh. 1). Since the deed was never recorded and the transfer tax declaration form was never filed by Mr. Lagasse, the last known record owners of the property were Albertine and Aurel Gagnon.

As a result, on May 27, 1998, Larry Cote, the tax collector for the Town of Van Buren, sent a notice to the Gagnon's by certified mail, return receipt requested, informing them that the property tax remained unpaid and that a lien was being claimed on the real estate. The notice demanded payment within 30 days, namely, June 26, 1998. (Def.'s Exh. 5). The court

4

finds that the notice was delivered and accepted on May 28, 1998 by Wayne Gagnon, a son of Albertine and Aurel who was assisting them in their affairs.

The Gagnon's did not pay the taxes as demanded on the property they believed they had conveyed to Mr. Lagasse. Consequently, on July 2, 1998 the tax collector sent the Gagnon's a lien certificate on the property, which had been recorded in the Aroostook County Registry of Deeds on July 2, 1998 at Book 1118, Page 270. (Def.'s Exh. 6). This prompted Attorney Smith to write to the Van Buren tax assessor on December 11, 1998 as follows:[2]

> This will provide you with information regarding the sale of real estate being described as tax map 8, lots 18 and 19 by Aurel Gagnon and Albertine Gagnon on January 31, 1997. I enclose a copy of the Deed and Transfer Tax Form for your information.
>
> Mr. Lagasse has received and has possession of the Deed and Transfer Tax Form, however he has not yet recorded the Deed as far as I can ascertain. The Gagnon's no longer own this land as they had been fully paid by Mr. Lagasse and they had delivered the deed to him. Mr. Lagasse's last known address is at 17 Court Street, Dover-Foxcroft, Maine, 04426. Taxation as of April 1, 1997 should have been to Peter Lagasse. If there is any further information required please feel free to be in touch with me. (Def.'s Exh. 4).

On December 18, 1998, presumably as a result of Attorney Smith's letter, the tax collector wrote to Mr. Lagasse at the Dover-Foxcroft address. (Def.'s Exh. 9). Enclosed with the letter were copies of: Attorney Smith's

---

[2] Based upon Attorney Smith's testimony, the court finds that he had spoken with town officials about the ownership status of the land in question and was asked by them to write a letter explaining and documenting the situation as to why the Gagnon's no longer owned the property.

5

letter of December 11, 1998; the warranty deed; the transfer tax form; the 1997-1998 tax lien, and: the 1998-1999 tax bill. This letter was "returned to sender' with a notation that the addressee had moved and left no forwarding address.

On June 3, 1999, the tax collector sent Mr. Lagasse a notice that the taxes due on the property for 1998-1999 remained unpaid, that a lien was being claimed on the real estate and that payment was demanded within 30 days, namely, July2, 1999. (Def.'s Exh. 11). This letter was also returned to sender as being unclaimed. The Lien Certificate for tax year 1998-1999 was sent to Mr. Lagasse at the Dover-Foxcroft address. No evidence was presented at trial as to how the certificate was sent to Mr. Lagasse or whether it was received. The certificate was recorded on July 8, 1999 at Book 1117, Page 317.

On November 19, 1999, the tax collector sent Mr. Lagasse "Notice of Impending Automatic Foreclosure" informing him that on January 2, 2000 the tax lien mortgage for tax year 1997-1998 would be foreclosed and his right of redemption would expire. (Def.' Exh. 7). This notice was sent certified mail, return receipt requested, to Mr. Lagasse at an address in Dexter, Maine. Mr. Lagasse signed for the letter on November 20, 1999.

On January 4, 2000, the tax collector sent Mr. Lagasse "Notice of Impending Automatic Foreclosure" to the effect that on February 4, 2000 the tax lien mortgage for the unpaid taxes for 1998-1999 would be foreclosed and his right of redemption would expire. (Def.'s Exh. 8). The notice was sent certified mail, return receipt requested, to "Inmate" Peter P. Lagasse at SCI (State Correctional Institution) at Fairton, New Jersey. The notice was signed for by someone at the prison, apparently on behalf of Mr. Lagasse. That Mr. Lagasse in fact received the notice is confirmed by his letter dated

6

January 10, 2000 to Larry Cote, the Van Buren Town Treasurer. (Pl.'s Ex. 1). Mr. Lagasse's letter reads as follows:

> I am in receipt of your letter dated January 4, 2000. I can assure you that I have not filed a deed with the Arrostock [sic] County Registry in Fort Kent Maine. There is a dispute over that property because Mr. and Mrs. Arel [sic] Gagnon sold the property under false pretences [sic].
> They had a lien on their mortgage at the time of the sale and did not or could not issue the deed at the time the final payment was made.
> I spoke to your town police about it and apparently are refuseing [sic] to enforce the law in your area.
> I have the original draft of that deed and not anyone else. The money is owed to me for presenting something that they didn't own out right and that for your records was sometime in May of 1996.
> You have the wrong dates and I can assure you that you have a false deed. I want my money back and if you fail through you letter to deliver to me any intent to further this wrong then it will become a civil or criminal issue.
> In short: Your records are false.

On June 8, 2000, the tax collector sent Mr. Lagasse a notice that the taxes on the property referred to as Tax Map 8, Lot 18 for tax year 1999-2000 remained unpaid, and that a lien was claimed against the real estate. (Def.'s Exh. 14). This notice was sent to Mr. Lagasse at the Dover-Foxcroft address previously provided to the town by Attorney Smith. No evidence was presented at the trial as to how this notice was sent, or whether Mr. Lagasse ever received it. On November 24, 2000, the tax collector sent Mr. Lagasse "Notice of Impending Automatic Foreclosure" to the effect that on January 8, 2001 the tax lien mortgage for unpaid taxes for 1999-2000 would

7

be foreclosed and that his right of redemption would expire.[3] (Def.'s Exh. 13).

In the summer of 2011, the Town Manager of Van Buren, Thomas Cannon (the husband of Defendant Sheila Cannon), presented a list of tax acquired properties to the Town Council. (Testimony of Gary Levesque). Included in that list was the real estate described as Tax Map 8, Lot 18. Mr. Levesque testified, and the court found his testimony credible, that notice of the sale of tax acquired properties was generally advertised and published for two consecutive weeks. Mr. Levesque testified that with respect the sale of the property at issue in this litigation, one of the advertisements ran in the St. John Valley Times on July 20, 2011, but he could not specifically recall if or when a second advertisement ran, other than to reiterate that the general practice of the Town of Van Buren was to run the advertisement for two consecutive weeks in the Valley Times. (Def.'s Exhs. 16 & 18).

The published notice announced that the Town of Van Buren would accept bids for the sale of the identified tax acquired properties, including "[a] certain parcel of land referenced by the town as Tax Map 8, Lot 18." (Def.'s Exh. 16). The offers (bids) had to be submitted "in a sealed envelope" and delivered to the town office "no later than 4:00 p.m. on July 29, 2011." (*Id.*). The notice also stated that the bids would be opened at the regularly scheduled Town Council meeting of August 8, 2011. (Def.'s Exhs. 16 & 18).

At some point prior to the deadline for the submission of bids, Town Manager Cannon came to the Town Council to discuss the propriety/legality of his wife bidding on the properties advertised for sale. As a result, it was

---

[3] No tax lien certificate for tax year 1999-2000 was presented as evidence at the trial.

8

understood that if Mrs. Cannon submitted bids, the Council would seek a legal opinion on the question. According to Mr. Levesque, who was on the Van Buren Town Council at the time and who served as its Secretary, the Council was advised that anyone could submit offers (bids) provided it was a sealed bid process, even members of the Town Council if the sale was advertised twice.

As advertised, the sealed bids were opened at the Town Council meeting of August 8, 2011. (Def.'s Exh. 20). As reflected in Item 6(a) of the minutes of that meeting, Defendant Sheila Cannon submitted two bids on the property identified as Tax Map 8, Lot 18. One bid was for $5,126.00, and the other was for $4,426.00. The minutes also confirm that deposits were made for each bid. At trial, Mrs. Cannon testified that her submission of two bids for the same property was a mistake and that she intended to submit bids on two different properties. A bid on Tax Map 8, Lot 18 was also submitted by Paul Desjardins, whose offer was described in the minutes as being "$4,000.00 or $500 over the highest bid up to $7,000.00." The minutes also state that "[b]y consensus, Council will get legal opinion on bids for Tax Map 8, Lot 18." (Def.'s Exh. 20).

Gary Levesque testified that the Council did obtain legal advice regarding whether Mr. Desjardins' bid was valid and whether Mrs. Cannon's bid could be accepted by the Town Council. The result of that legal "opinion" was that the Desjardins' bid was deemed not valid and the high bid submitted by the Defendant could be accepted. The Town Council acted in accordance with that legal advice at its meeting of August 22, 2011.

Mr. Levesque testified that the Town Manager did not participate in the bid opening process. Through a Municipal Quitclaim Deed dated September 19, 2011, however, four members of the Van Buren Town

9

Council and Thomas R. Cannon, as Town Treasurer, conveyed the Town's interest in the parcel of real estate referenced as Tax Map 8, Lot 18 to Sheila Cannon, "by virtue [of] unpaid taxes for the tax year(s) 1997, 1998 . . . ." (Def.'s Exh. 15). Mr. Levesque explained that Mr. Cannon was a signatory on the deed to his wife because it was the longstanding practice of the Town of Van Buren to have the Town Manager/Treasurer sign deeds from the Town.

The Defendant testified that the deposit amount that accompanied her successful bid for Tax Map 8, Lot 18 was made with a check from a joint checking account with her husband, Thomas Cannon. She further testified that her husband was aware of her interest in bidding on some of the tax acquired properties being offered for sale by the Town. The Quitclaim Deed from the Town of Van Buren to the Defendant (Def.'s Exh. 15) is recorded at Book 1737, Page 89 as of October 3, 2011.

Albertine Gagnon died in 2001. Aurel Gagnon died in 2008. At the time of his death, Aurel Gagnon was survived by six sons. In a Quitclaim Deed dated August 21, 2014, Donald, Wayne and Ricky Gagnon conveyed their interests in Tax Map 8, Lot 18 to their brother David, a Plaintiff in this action. (Plt.'s Exh. 6). In a Quitclaim Deed dated September 2, 2014, Alphee Gagnon conveyed his interest in Tax Map 8, Lot 18 to his brother David. (Plt.'s Exh 7). Steven Gagnon, the other Plaintiff in this action, has not conveyed any interest he may have in Tax Map 8, Lot 18.

This action was commenced on November 4, 2014.

## DISCUSSION

In Count I of their Complaint, the Plaintiffs seek a determination from this court pursuant to the Declaratory Judgments Act that their title to the property identified as Van Buren Tax Map 8, Lot 18 is superior to that of

10

Defendant Sheila Cannon. The essential thrust of the Plaintiffs' argument is that (1) the property was never effectively conveyed from Aurel and Albertine Gagnon to Peter Lagasse, because the latter never accepted the warranty deed, and; (2) foreclosure of the tax liens as against Aurel and Albertine Gagnon was legally ineffective because the Town of Van Buren failed to comply with the requirements of 36 M.R.S. §§942 & 943.

Count II of the Plaintiffs' Complaint asserts a claim for equitable relief on the basis that the conveyance of the Town's interest in Tax Map 8, Lot 18 to the Defendant was invalid because it violated the requirements of 36 M.R.S. §946. The Plaintiffs specifically allege that the sale of the property was not advertised as required and constituted a "sham transaction" with the Defendant's husband, the Town Manager, being the "real party in interest."

## COUNT I

"The conveyance of title to property requires a manual transfer of the deed and an intent to pass title between a grantor and a grantee." *Waxler v. Waxler*, 1997 ME 190, ¶ 6, 699 A.2d 1161 *quoting Poling v. Northup* 652 A.2d 1114, 1115 (Me. 1995). A presumption arises that both the grantor and grantee intended to immediately transfer title to property, when physical possession of the deed is transferred from one party to the other. *Waxler*, 1997 ME 190, ¶ 8 *quoting Coombs v. Fessenden*, 116 Me. 304, 306, 101 A. 465 (1917).

It has also been recognized that the "delivery of a deed is a consensual act." *Hood v. Hood*, 384 A.2d 706, 707 (Me. 1978). Stated otherwise, "effective delivery of a deed requires the correlative act of acceptance by the grantee." *Id.* The requirement that there be an acceptance of the deed derives from the rationale that an estate cannot be "thrust upon a person

11

against his will." *Id.* Nevertheless, subsequent conduct by a grantee may constitute acceptance of a deed, particularly where the deed has been physically delivered to and possessed by the grantee. *See Tripp v. McCurdy*, 121 Me. 194, 116 A. 217 (1922). *See also estate of Deschenes*, 2003 ME 35, ¶ 11, 818 A.2d 1026. Whether there has been an acceptance of a deed transferring title, is a question of fact. *Hood*, 384 A.2d at 708. Similarly, whether there was "an intent to pass title between a grantor and grantee" is a fact-based inquiry. *Poling v. Northup*, 652 A.2d at 1115. Finally, the fact that a grantee has failed or refused to record a deed does not, of itself, rebut the presumption of an immediate transfer of title upon the physical transfer of the deed. *Estate of Deschenes*, 2003 ME 35, ¶ 10; *Waxler*, 1997 ME 190, ¶ 10.

In this case, the Plaintiffs have the burden of proving by a preponderance of the evidence, that there was not a delivery and acceptance of the warranty deed to Tax Map 8, Lot 18 from their parents to Mr. Lagasse in 1997. The court finds that the Plaintiffs have failed to meet that burden of proof. Indeed, based on the evidence presented at trial, the court finds that there was, in fact, a valid delivery and acceptance of the warranty deed to Tax Map 8, Lot 18 from Aurel and Albertine Gagnon to Peter Lagasse in February 1997.

In the court's view, the evidence that Aurel and Albertine Gagnon intended to convey title to the property in question to Mr. Lagasse is overwhelming. They accepted and received the full purchase price of $7,000 from Mr. Lagasse and executed and had their attorney mail a warranty deed to the property to Mr. Lagasse. The Gagnon's thereafter ceased paying the taxes on the property, and when confusion arose as to who owned the property, the Gagnon's, through their attorney acting as their

12

agent, represented to town officials that they had conveyed the property to Mr. Lagasse and that he was the legal owner of the real estate. In short, the Gagnon's disavowed any ownership interest in the property that is the subject of this litigation.

The primary argument advanced by the Plaintiffs is that Peter Lagasse refused to accept the warranty deed purporting to convey the property to him. The Plaintiffs point to Mr. Lagasse's letter expressing his dissatisfaction with the Gagnon's and his belief that the Gagnon's had misrepresented the sale of the property. (Plt.'s Exhs. 1, 4 & 5). Those letters certainly express Mr. Lagasse's belief that the Gagnon's perpetrated a fraud against him. But those letters only show Mr. Lagasse's beliefs – there was no evidence presented that his beliefs had any basis in fact.

More fundamentally, Mr. Lagasse's letters do not establish that he refused to accept the deed as physically delivered to him by Attorney Smith by letter dated February 5, 1997. (Def.'s Exh. 3). Mr. Lagasse had already paid the full purchase price for the property and, therefore, he knew that execution and delivery of the deed to him by the Gagnon's would complete the sale and was intended to immediately transfer title to the property to him. This is not a case of a grantor trying to "thrust" an estate upon an unknowing grantee. On the contrary, Mr. Lagasse had paid for the property and he expected to receive free and clear title to it. And that is what the Gagnon's were purporting to convey by means of the warranty deed.

Although it is true that Mr. Lagasse expressed his unhappiness with the Gagnon's and with what he perceived to be their improper actions, he took no action to rescind the transaction or to seek a declaration from the court at that time (or at any time) to determine the validity of the transfer of title.

13

Rather, he claimed that he was entitled to the return of his money and he sought to have the Gagnon's investigated by law enforcement authorities. Notwithstanding his accusations against the Gagnon's, he continuously maintained physical possession of the deed. In November 1999 and again in January 2000 (Def.s' Exhs. 7 & 8; Plt.'s Exh. 1), he received actual notice that the Town of Van Buren was claiming liens on the property and was threatening to foreclose on it. He continued to insist that he possessed the original of the deed and that the Gagnon's owed him his money back. In short, Mr. Lagasse continued to assert that he had a basis to bring a breach of contract claim against the Gagnon's (which he never did), but he steadfastly held physical possession of the original deed. A grantee cannot frustrate the transfer of title to property he has purchased by publicly accusing the grantors of fraud, while indefinitely and exclusively maintaining actual, physical possession of the deed of transfer.

Under these facts and circumstances, the court finds that that there was a delivery of the warranty deed to the property at Tax Map 8, Lot 18 and an acceptance of that deed, with the result that title to that property immediately passed to Mr. Lagasse. Accordingly, as of no later than February 10, 1997, Aurel and Albertine Gagnon no longer owned the property and the Plaintiffs, as their heirs, could not inherit property their parents did not own at the time of their deaths.

Since Aurel and Albertine Gagnon had conveyed title to the property to Mr. Lagasse as of February 1997, the Town of Van Buren was not required to give them notice of any tax lien foreclosure for tax years 1997-1998 or tax year 1998-1999 when Peter Lagasse was the owner. It is, therefore, unnecessary for the court to address whether the Town complied with the requirements of 36 M.R.S. §§942 & 943.

14

Judgment on Count I of the Complaint will be entered for the Defendant against the Plaintiffs.

## COUNT II

Count II of the Plaintiffs' Complaint purports to be brought pursuant to 36 M.R.S. §946. That provision of law authorizes a municipality that has acquired real estate though the foreclosure of tax liens, to maintain an action "for equitable relief against any and all persons who claim or may claim some right, title or interest in the premises adverse to the estate of such municipality." It also permits any purchaser of such property from a municipality to maintain a similar action for equitable relief against any claimants to the property. The Plaintiffs to this action are neither a municipality nor a purchaser of such property.

Section 946, however, also provides as follows:

> No municipal officer shall, while holding office, acquire from that municipality any interest in real estate acquired by that municipality on account of nonpayment of taxes, unless such sale occurs by sealed bid after duly advertising the same at least twice during a 7-day period prior to the acceptance of bids. Any town official who submits a sealed bid shall not take part in the bid acceptance process except that a municipal officer may purchase tax acquired property if the property was owned by the municipal officer's son, daughter, spouse or parent immediately prior to its acquisition by the municipality and if such purchase is authorized by the municipality.

Nothing in section 946 specifies how these prohibitions on "municipal officers" and/or "town officials" are to be enforced, or who is permitted to maintain such an enforcement action. Moreover, the statute does not declare what the remedy is if the prohibitions are violated or whether the purchase of real estate in violation of the prohibitions is rendered void or voidable.

15

Assuming, without deciding, that the Plaintiffs may bring an action under 36 M.R.S. §946 to invalidate the quitclaim deed from the Town of Van Buren to the Defendant, the court finds that the Plaintiffs have failed to meet their burden of proving that a violation of that statute occurred.

The Plaintiffs contend, citing the testimony of Gary Levesque, that the evidence at trial showed that the property identified as Tax Map 8, Lot 18 was not advertised "at least twice during a 7-day period prior to the acceptance of bids." With respect to this requirement, section 946 applies only to "municipal officers." That term is expressly defined in 36 M.R.S. §501(4) to mean "the mayor and aldermen of cities, the selectmen of towns and the assessors of plantations." This definition is almost identical to the one for "municipal officers" found in 30-A M.R.S. §2001(10). By contrast, the term "town official" is not defined in 36 M.R.S. §501. The term "municipal official" is, however, defined in 30-A M.R.S. §2001(11) to mean "any elected or appointed member of a municipal government."

Thus, while a town manager would be a "municipal [town] official," he would not be a "municipal officer." On the other hand, a mayor, or councilor or selectman would be both a "municipal officer" and a "municipal [town] official." It is obvious that the Legislature knew how to distinguish between the two terms, and the court must assume that when the Legislature used the terms "municipal officer" and "town official" in section 946, it did so to differentiate between them. Accordingly, the court finds that the requirement of advertising twice within a 7-day period of time was not applicable to the submission of a sealed bid by the wife of the Town Manager.

The Plaintiffs further argue that the Town Manager took "part in the bid acceptance process," (1) by virtue of the fact that his wife made the

16

deposit for her sealed bid from a joint checking account with him, and (2) by signing the quitclaim deed. The court rejects both of these arguments.

No evidence was presented at trial that the Town Manager participated in the "bid acceptance process." Indeed, the testimony from Mr. Levesque was that the Town Manager was not involved in opening the bids or in deciding which bids to accept. The sealed bids were opened by the Chair of the Town Council and the Council itself voted on which bids would be accepted. In the case of Tax Map 8, Lot 18 the Council did so after receiving legal advice. In fact, it was the Town Manager who alerted the Council to the fact that his wife wished to submit bids on some of the properties listed for sale, which prompted the Council to seek legal guidance. At most, the Town Manager physically brought the sealed bids to the Council meeting on August 8, 2011.

The fact that Mrs. Cannon used a check from her joint checking account with her husband, the Town Manager, to satisfy the deposit requirement as part of her sealed bid does not, in the court's view, constitute taking "part in the bid acceptance process." Moreover, Mr. Levesque testified that it was the general and routine practice of the Town of Van Buren for the Town Manager/Treasurer to sign deeds from the Town, along with members of the Town Council. Again, the fact that the Town Manager followed that practice in this case does not establish a violation of 36 M.R.S. §946. The signing of the quitclaim deed occurred well after the Town Council decided to accept the Defendant's successful bid for Tax Map 8, Lot 18. Furthermore, by its very terms, the prohibitions in section 946 apply only to "municipal officers" and "town officials," not members of their families.

17

Finally, the court finds no basis to conclude that the transaction involving the conveyance of the property referred to as Tax Map 8, Lot 18 by the Town of Van Buren to the Defendant was a violation of any provision of the Town's charter.

## CONCLUSION

The entry is:

Judgment for the Defendant against the Plaintiffs on Counts I and II of the Complaint, with costs.

The Clerk is directed to incorporate this Order by reference in the docket in accordance with M.R.Civ.P. 79(a).

DATE: December 7, 2017.

William Stokes
Justice, Superior Court

18

STATE OF MAINE

AROOSTOOK, ss

SUPERIOR COURT
CIVIL DOCKET
DOCKET NO. CARSC-CV-14-167

DAVID L. GAGNON and )
STEVEN GAGNON )
        PLAINTIFFS )
vs. )
  )
  )
  )
  )
SHEILA CANNON )
        DEFENDANT )

ORDER ON DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

On July 16, 2015 Defendant filed a motion for summary judgement. For the reasons set forth below, Defendant's motion is denied.

## BACKGROUND

This action involves a piece of property located in Van Buren previously owned by Aurel and Albertine Gagon. In 1996 the Gagnon's were involved in discussions to sell the property to Peter Lagasse. Legasse paid the agreed upon amount and in January of 1997, the Gagnon's had a deed and transfer tax form prepared to convey the property to Mr. Lagasse. The Gagnon's purportedly signed the documents and had them mailed to Mr. Lagasse. See Affidavit of Anthony Martin dated June 11, 2015. The deed however was never recorded. Letters have been produced purportedly authored by Mr. Lagasse indicating generally his frustration in dealing with the Gagnon's, that he did not intend to record the deed, and that he wanted his money back. See Affidavit of Anthony Martin dated August 12, 2015.

The taxes on the property were not paid and ultimately in 1998 and 1999 the Town of Van Buren filed with the registry of deeds tax lien certificates against Aurel and Albertine Gagnon. The taxes remain unpaid. In September 2011 the Town of Van Buren conveyed the property to Sheila Cannon by a municipal quitclaim deed.

## DISCUSSION

The Plaintiffs in this action are heirs of Aurel and Albertine Gagnon. They claim that the tax lien filing was ineffective to divest Aurel and Albertine Gagnon of title, and that they should be declared to have superior title to the property. Plaintiffs also argue that the deed

to Mr. Lagasse was not accepted and therefore title remained vested with Aurel and Albertine. See *Hood v. Hood*, 384 A.2d 706 (Me. 1978). In her motion for summary judgment, defendant argues that Aurel and Albertine Gagnon no longer owned the property and had divested themselves of any interest when they delivered the deed to Mr. Lagasse, (See *Waxler v. Waxler*, 699 A.2d 1161 (Me. 1997)) and therefore the heirs of Aurel and Albertine, Plaintiff's herein, have no standing or legal basis to bring this action. Plaintiffs counter that Mr. Lagasse did not accept the deed from Aurel and Albertine, so title remained with the Gagnon's.

Summary judgment is appropriate when there are no genuine issues of material fact, and the facts entitle a party to judgment as a matter of law. M.R. Civ. P. 56 (c); In Re Estate of Davis, 2001 ME 106, ¶7, 775 A.2d 1127, 1129. The Court should grant a defendant's motion for summary judgment if the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law. Curtis v. Porter, 2001 ME 158, ¶7, 784 A.2d 18,21. A fact is material when it has the potential to affect the outcome of the suit. Kenny v. Dep't of Human Services, 1999 ME 158, ¶3, 740 A.2d 560, 562. An issue is genuine if sufficient evidence supporting the claimed factual dispute exists to require a choice between the parties' differing versions of the truth at trial. *Id*.

In this case material facts remain. Both Plaintiff and Defendant rely on affidavits made by Anthony Martin, Tax Assessor for the Town of Van Buren. The affidavits taken together make the suggestion that a deed signed by Aurel and Albertine Gagnon was mailed to Mr. Lagasse, but that Mr. Lagasse did not record the deed and was not satisfied with the transaction. A question of fact that can only be resolved by trial remains whether there was delivery to and acceptance by Mr. Lagasse of the deed sufficient to pass title to Mr. Lagasse and divest Aurel and Albertine of title. Whether Aurel and Albertine were divested of title is a question of fact that must be resolved in order to ultimately rule on this case. Accordingly, Defendant's motion for summary judgment is denied.

Dated: December 5, 2016

Justice, Superior Court